UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
-------------------------------------------------------x
                                                       |
FRIENDSHIPCOLLAR LTD.,                                  |     Civil Action:  _____
78 York Street                                         |
London W1H 1DP                                         |
        UNITED KINGDOM                                 |
                                                       |
                Plaintiff,                             |
                                                       |
        ~ against ~                                    |     COMPLAINT
                                                       |
PAWZ LLC                                               |     JURY TRIAL DEMANDED
c/o  Registered Agent, Christian Campisi               |
        6981 Maple Glen Avenue NW                      |
        North Canton, OH 44720                         |
                                                       |
CHRISTIAN CAMPISI                                      |
6981 Maple Glen Avenue NW                              |
North Canton, OH 44720                                 |
                                                       |
                Defendants.                            |
                                                       |
-------------------------------------------------------x
```

Comes now the Plaintiff **FRIENDSHIPCOLLAR LTD.** by and through their

counsel, **MICHAEL J. ELLIOT, ESQ.,** of **SCANLON & ELLIOT**, as and for their Complaint

against the Defendants **PAWZ LLC** and **CHRISTIAN CAMPISI**, and does respectfully allege

as follows:

## I.    PARTIES

1.    At all times relevant to this Complaint, Plaintiff **FRIENDSHIPCOLLAR LTD.** was a corporation organized under the Laws of the United Kingdom of Great Britain and Ireland and registered as an English company.  In this Complaint, **FRIENDSHIPCOLLAR LTD.** is sometimes referred to as "**FriendshipCollar**" or "**Plaintiff**".

2.    Upon information and belief, at all times relevant to this Complaint, Defendant **PAWZ LLC** was a limited liability company organized and existing under Ohio law. In this Complaint, **PAWZ LLC** is sometimes referred to as "**Pawz**".  **Pawz** conducts business, manufactures and/or distributes products within North Canton, in the County of Stark in the State of Ohio and throughout the United States.

3.    Upon information and belief, at all times relevant to this Complaint, Defendant **CHRISTIAN CAMPISI** was a natural person resident in the County of Stark in the State of Ohio.   In this Complaint, **CHRISTIAN CAMPISI** is sometimes referred to as "**Campisi**".  The basis of Plaintiff's information and belief about Campisi's residence includes, but is not limited to public records of the Massillon Municipal Court.

## II.    JURISDICTION AND VENUE

4.    Plaintiff respectfully submits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction); 15 U.S.C. § 1121 (Lanham Act claims); and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

5.    Venue is properly lain in this District pursuant to 28 U.S.C. §§ 1391(b) because both Defendants are resident in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

6.     Venue is properly lain in the Akron divisional office of the Eastern Division because the Defendants are resident in the County of Stark.

### III.     FACTUAL ALLEGATIONS

7.     As described fully below, the Defendants have directly and intentionally exploited the trademarks, trade dress, copyrights and other intellectual property of the Plaintiff for their own financial benefit and in violation of Ohio and federal law.  After exhausting all efforts to resolve this matter amicably, the Defendants chose to persist in their violations and have left the Plaintiff no choice but to file this suit to protect their intellectual property rights.

### A.     FriendshipCollar Activities and Intellectual Property

8.     Launched as a company in 2014, FriendshipCollar Ltd. was built on a foundation of love and friendship as inspired by best friends everywhere.

9.     FriendshipCollar believes that constant companions deserve the very best: whether a feline friend or a canine chum, FriendshipCollar's matching pet collars and bracelets symbolize the powerful bond between friends and pets, and represent their past, present and future adventures together.

10.     Friendship is the exclusive owner of the FRIENDSHIPCOLLAR® trademark (*See* **Exhibit A** showing United States Trademark Registration Number 4916125) and the "FC" logo (See **Exhibit B** showing United States Trademark Registration Number 5033675) which is shown in the illustration below:



Illustration 1.  Trademarked Logo of FriendshipCollar

11.     Plaintiff is the owner and sole manufacturer, distributor and seller of the highly distinctive matching bracelet and collar sets that create a unique symbol which honors the friendship that animals play in their customer's lives.   All FriendshipCollars are made of ethically sourced materials, and a portion of all sales is donated to shelters across the United States.

12.     All FriendshipCollars are 100% cruelty-free because FriendshipCollar believes that no animal should suffer for fashion.

13.     FriendshipCollar is proud to have been the first pet product to receive designation as a "PETA-Approved Vegan" pet product.  PETA described the brand as follows:

> "While the logo is fashion-focused, we have granted FriendshipCollar special permission to extend its use to its matching cruelty-free dog and cat accessories that help shoppers avoid cruelly produced leather items.  PETA is elated to know that compassionate companies such as FriendshipCollar choose to sell cruelty-free accessories and provide consumers with the assurance that no animals were harmed."

Tracy Reiman, Vice President of PETA, as quoted at http://www.vegan-magazine.com/2015/11/19/friendshipcollar-the-worlds-first-peta-approved-vegan-pet-product/



Illustration 2. PETA-Approved VEGAN Logo which FriendshipCollar was authorized to use

14.     FriendshipCollar's highly distinctive products transcend the "pet" category and are sold in fashion boutiques and lifestyle stores.  FriendshipCollar products have

been featured at Nordstrom, FreePeople, Story (the NYC pop up store), and other exclusive shops across the United States and the world.

15.     FriendshipCollar products are instantly recognizable, not only by its bold and unique prints, but also through its signature tan inner material adorned with a gold-flocked FriendshipCollar logo.  As an example, see below FriendshipCollar's signature "Hipster Pup" FriendshipCollar:



Illustration 3.  The Hipster Pup FriendshipCollar.

*See* https://friendshipcollar.com/shop/the-hipster-pup/

16.     FriendshipCollar's attention to detail and luxurious finish is emphasized by shipping each FriendshipCollar set in a white drawstring bag with gold-plated end caps. Every FriendshipCollar product includes these signature details because this attention to detail paired with unparalleled craftsmanship define a FriendshipCollar product.  See, as an example, the distinct and luxurious FriendshipCollar packaging illustrated below.



Illustration 4.  FriendshipCollar Packaging

17.     FriendshipCollar has been featured in dozens of online and print publications and has been featured on both local and national television programs across the United States.   NBC's nationally televised "Today Show" described FriendshipCollar as a "must-have item for your pet".  *See* Illustration 5.

 

Illustration 5. Screencaps of NBC's Today Show of August 22, 2017.

18.     FriendshipCollar received the 2015 Pet Business Industry Recognition Award for best dog collars on the market.



Illustration 6. Recognition Award from Pet Business,
which FriendshipCollar is authorized to use.

19.     FriendshipCollar is proud of its unusually high engagement on social media with over 175,000 Facebook.com followers.   The hashtag "#FriendshipCollar" on Instagram.com brings up over 25,000 customer uploaded pictures which show the FriendshipCollar is not limited to dogs and cats, but also pet pigs, foxes, ferrets, and wolves who appreciate the matching accessories.   Friendship has earned over a thousand independent 5-star reviews on its website.



Illustration 7. Sample of customer engagement and brand recognition on social media, *See* https://www.instagram.com/p/BfY_z7UAOxK/ posted February 20, 2018.

20.    FriendshipCollar is the sole owner of all trademarks, trade dress, copyrights and other intellectual property related to its' brand and all text and pictures on the FriendshipCollar.com website.  FriendshipCollar has never given any license or other permission to Defendants to manufacture, distribute, or sell products based on the design and appearance of Friendship Collar's intellectual property.

21.    FriendshipCollar products are protected under the Berne Convention, and both federal and Ohio trademark and unfair competition laws, and each of FriendshipCollar's trademarks, copyrights, trade dress, and other intellectual property represents a valuable asset of FriendshipCollar (hereinafter the "Intellectual Property").

22.    The Intellectual Property was distinctive at the time they were introduced into the market and have acquired an association and/or secondary meaning among relevant consumers to signify and suggest that FriendshipCollar was the source of such products.

23.    Plaintiff spent substantial funds, time, and other resources toward marketing and promoting FriendshipCollar products throughout the United States including here in the great State of Ohio.  The goodwill associated with the Intellectual Property was accomplished through hard work, significant investment by the company, and considerable financial expense.

**B.    Defendants' Shameless Pattern of Intentional Violations**

24.    As fully described below, both Defendants have intentionally and shamelessly violated FriendshipCollar's Intellectual Property.

### i.      Liability of Both Defendants

25.      While some of the Defendants' actions may purport to be in the name of a limited liability company, the corporate form may be disregarded here because, upon information and belief: (1) control over Pawz LLC by Christopher Campisi was so complete that Pawz LLC had no separate mind, will, or existence of its own; and (2) control over Pawz LLC by Christopher Campisi was exercised in such a manner as to commit an unlawful act against FriendshipCollar.  *See* Belvedere Condominium Unit Owners' Assoc. v. R.E. Roark Cos., Inc., 67 Ohio St.3d 274, 289 (1993)(describing circumstances under which Ohio law pierces the corporate veil to impute liability to individual shareholders); Dombroski v. Wellpoint, Inc., et al., 119 Ohio St.3d 506 (2008) (broadening second Belvedere prong to "similar unlawful acts" that evince shareholder misconduct).

26.      The basis of Plaintiff's belief that control over Pawz LLC by Christopher Campisi was so complete that the limited liability company had no separate mind, will, or existence of its own includes, but is certainly not limited to, the fact that some of the most flagrant acts committed in violation of Plaintiff's Intellectual Property were done by Christopher Campisi in his personal capacity and not in the name of the LLC.

27.      These acts include when Christopher Campisi personally – and not in the name of Pawz LLC – placed an open buying request on the Alibaba website where he personally requested that manufacturers "QUICKLY" produce a FriendshipCollar knockoff "At a low cost per piece".



Illustration 8. Screen capture from Alibaba website that appears to show a manufacturing request of Infringing Products by Christian Campisi dated February 28, 2017.

28.     The picture named "IMG_9773.jpg" posted by Christopher Campisi in his personal capacity is a copyrighted picture of FriendshipCollar's "Devoted Doggy" unlawfully exploited from FriendshipCollar's website, as shown below:



Illustration 9. Screenshot of the "Devoted Doggy" FriendshipCollar product page available at https://friendshipcollar.com/shop/devoted-doggy/ showing the origin of IMG_9773.jpg

29.     The other two pictures posted by Christopher Campisi in his manufacturing request on Alibaba appear to be taken from Instagram where they were posted with the #FriendshipCollar hashtag and show FriendshipCollar products, as shown below:





Illustration 10.     Full size of IMG_9778.jpg and IMG_9774.jpg
                     posted by Campisi on Alibaba.

30.     Upon information and belief, Defendants are in sole possession of further evidence that will show that the Pawz LLC has no separate mind, will or existence of its own but rather, that the violations were personally committed by Campisi.  Plaintiff expects that such evidence will be disclosed during Defendants' Discovery.

31.     Therefore since Pawz LLC was merely an alter ego of Campisi, both Pawz LLC and Christopher Campisi personally may be found liable for the violations described in this Complaint.

32.     The basis of Plaintiff's belief that Campisi exercised his control over Pawz LLC in such a manner that committed unlawful acts against FriendshipCollar, is that Campisi is the control group of Pawz LLC and personally committed the intentional violations of the Plaintiff's Intellectual Property described in this Complaint.

## ii.      Defendants' Violations

33.     Defendants operate a popular instagram.com profile with over a million "followers" which is monetized through a shopify.com online sales platform at pawzshop.com.

34.     Under the "Accessories" category of their online shop, Defendants offered for sale a number of pet collar-and-bracelet sets which were called "Best Friend Bracelet + Collar" sets.  In this Complaint, these Best Friend Bracelet + Collar offered for sale by the Defendants are referred to as the "Infringing Products".

35.     Despite the vast inferiority in workmanship and quality-of-materials of the Infringing Products as compared to the genuine article, to an unsuspecting consumer it would appear that there are only slight differences and the Infringing Products are so substantially similar in appearance, name and commercial impression as to suggest that the Defendants intentionally intended to trade off the substantial goodwill and trade dress rights owned by Plaintiff.

36.     Specifically, as described above in ¶¶ 27 – 30 the Infringing Products were expressly manufactured as a knock-off of the Intellectual Property.

37.     Further, the Infringing Products have been marketed through blatant and intentionally violation of the Plaintiff's copyrighted descriptions of the FriendshipCollar.

38.     As an example, the below is a screen capture of the FriendshipCollar "Dotty About You" Products.



Illustration 11.    Screenshot of the "Dotty About You" FriendshipCollar product page at https://friendshipcollar.com/shop/dotty-about-you/

39.    Compare with:



Illustration 12. Screenshot of Defendants' "Black Gold" Infringing Product.

40.     To be specific, compare Plaintiff's language to the Infringing Language:

**Original Language**

We stamp gold gilded polka dots on animal friendly vegan leather, each set features gold plated hardware for a luxury finish . . . .

**Defendants' Infringing Language**

We stamp gold gilded polka dots on animal friendly vegan leather, each set features gold plated hardware for a luxury finish!

41.     Defendants' Infringing Products intentionally copied Plaintiffs products. Using as one example the "Black Gold" knock-off of the "Dotty About You" product, both the Infringing Product and the bona fide article exhibit the following non-functional features:

- Overall presentation as a matching 'friendship' set; one collar for a dog and a matching bracelet for the owner;

- Black collar and bracelet, with gold polka dot flocked detail;

- Contrasting tan inner material;

- Gold flocked logo on the tan inner material;

- Gold flocking on the tabs;

- Gold hardware buckle and D-ring; and

- The style of picture to present the product in the same positioning of both the color and bracelet.

42.     Plaintiff acknowledges that there are obvious differences between the Infringing Product and the bona fide article.  For example, upon information and belief the Infringing Product does not comply with country of origin requirements; the bona fide article complies with all international trade obligations.

43.     In  addition,  the  Defendants  blatantly  copied  the  style  of  the
FriendshipCollar  packaging,  which  was  designed  by  FriendshipCollar  to  be  unique  to  their
product in order to provide an enhanced customer experience.

See as follows:



Illustration 13.   Picture comparing the FriendshipCollar packaging
                   with the Defendants' knock-off.

44.     Defendants'  Infringing  Products  intentionally  copy  Plaintiffs  packaging.
Both  the  Infringing  Product  and  the  bona  fide  article  exhibit  the  following  non-functional
features:

- Soft drawstring pouch bag;

- Logo printed on the front centre of the pouch bag; and

- Pouch bag has the same shape, size and function.

45.     Defendants'  Infringing  Products  intentionally  copy  the  manner  in  which
the product is presented inside the pouch bag.  Both the Infringing Product and the bona fide
article exhibit the following non-functional features:

- • The Product is packaged coiled; and

- • The collar and the bracelet are wrapped together and held with a gold twist tie.



Illustration 14.   Picture of Plaintiff's presentation of Product in packaging.
.
Compare the Infringing Products:



Illustration 15.   Defendants' presentation of the Infringing Product in packaging.

46.     Plaintiff acknowledges that there are obvious differences between the packaging of the Infringing Product and the bona fide article.    For example, the

Infringing Product is delivered to the customer with silicone gel, which is considered a dangerous and unacceptable practice in the pet accessory industry because pets are often given products to open and may swallow the silicone beads which can be very dangerous.  By contrast the bona fide article complies with all best practices in the industry and has been so recognized by PETA and Pet Business. (*See, e.g.*, above at ¶¶ 13 and 18)



Illustration 16.   Defendants' inclusion of dangerous silicone beads
with packaging of their pet product.

47.     In addition, the quality of the materials and workmanship used by the Defendants to manufacture the Infringing Products are inferior to those of Plaintiff.

48.     The Infringing Products are marketed and sold to the general class of consumers, many of whom, upon information and belief, are likely to be familiar with the #friendshipcollar hashtag on social media and the discussion of FriendshipCollar on television and the press.  Reasonable consumers are likely to mistakenly believe that the Infringing Products are somehow licensed by, related to, or affiliated with Plaintiff.Upon information and belief, Defendants intended for reasonable consumers to mistakenly believe that the Infringing

Products are somehow licensed by, related to, or affiliated with Plaintiff.  The basis of Plaintiff's belief includes but is not limited to the intentional copying of the bona fide article.

49.     Defendants' manufacture, distribution, and sale of the Infringing Products constitutes trade dress infringement and dilution of FriendshipCollar's rights in the highly distinctive FriendshipCollar products.

50.     Upon information and belief, Defendants' use of FriendshipCollar's Intellectual Property was willful and intentional and done for the purpose of trading upon the valuable goodwill and public recognition earned by FriendshipCollar through years of hard work.  The basis of Plaintiff's belief that Defendants' actions were willful and intention include, but are not limited to, the pictures that Campisi posted when he requested that knock-offs be manufactured.

### iii.      Defendants' Feign Compliance

51.     Plaintiff's counsel sent Defendants a Cease and Desist letter on or about December 18, 2017, which demanded that the Defendants stop their infringing activity and preserve all relevant evidence for an upcoming lawsuit to be filed against them (*See* **Exhibit C**).

52.     By telephone conversations on or about Christmas 2017, the Defendants represented that they would take down infringing material from their website and for a short while the infringing products were listed as "Sold Out".

53.     In early February 2018, Plaintiff found out that the Infringing Products were once again being sold on Defendants' website.  By letter e-mailed to Defendants on February 23, 2018 the Plaintiff again demanded that the Defendants' cease selling Infringing Products and once again the relevant products are no longer for sale on the Defendants' website (*See* **Exhibit D**).

54.     Plaintiff's have reasonable basis to believe that unless the Defendants are subject to a temporary and permanent injunction, the Defendants will continue to engage in the acts complained of in this Complaint.

55.     The basis for Plaintiff's belief that Defendants will continue to violate their rights include, but is not limited to the fact that Defendants have sold Infringing Products and misappropriated Plaintiff's copyrights, trademarks and other intellectual property willfully and with actual knowledge of FriendshipCollar's ownership rights.   In addition, Plaintiff observes that for their own commercial gain, the Defendants have intentionally exploited and appropriated FriendshipCollar's valuable and hard-earned goodwill and reputation in the market in violation of FriendshipCollar's rights.  It is therefore reasonable to believe that such violations will continue unless the Defendants are temporarily and permanently enjoined.

56.     Plaintiff further observes that as of the filing of this Complaint, the Defendants' instagram profile continues to market the Infringing Products for sale, see below:



Illustration 17.       Defendants' continuing marketing of Infringing Products at
                       https://www.instagram.com/p/BXp-BbBhYaG/\ (checked Feb. 27, 2018)



Illustration 18.    Defendants' continuing marketing of Infringing Products at
https://www.instagram.com/p/BYii7SRh-Ab/ (last checked Feb. 27, 2018)



Illustration 19.    Defendants' continuing marketing of Infringing Products at
https://www.instagram.com/p/BYCBOcVBmX0/ (last checked Feb. 27, 2018)

57.    Therefore despite the temporary "Sold Out" status that Defendants
created in December 2017 and the temporary "404 PAGE NOT FOUND" that comes up as of the
filing of this Complaint, Plaintiff have reasonable basis to believe that absent a temporary and
permanent injunction the Infringing Products will continue to be sold.

## COUNT 1

### TRADE DRESS INFRINGEMENT,
### FALSE DESIGNATION OF ORIGIN
### AND UNFAIR COMPETITION IN
### VIOLATION OF § 1125(a) OF THE LANHAM ACT

58.     Plaintiff repeats and incorporates by reference the allegations of Paragraphs 1 through 57 as if fully set forth herein.

59.     Plaintiff owns a protectable interest in the trade dress of its FriendshipCollar product, some of the elements of which are described in ¶¶ 41 – 45 above. Elements of this Trade Dress are non-functional.

60.     Defendants' manufacture, distribution and sale of the Infringing Products as described above constitutes trade dress infringement, false designation of origin, and/or false or misleading description of fact which is likely to cause confusion among relevant consumers, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants with the Plaintiff, or as to the origin, sponsorship, or approval of the Defendants' goods and services in commercial activities by the Plaintiff, in violation of Section 43(a) of the Lanham Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a).

61.     By reason of Defendants' acts as alleged above, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation and goodwill.

62.     Unless enjoined by this Court, Defendants will continue to do the acts complained of herein and cause said damage and injury, all to the irreparable harm of Plaintiff. Plaintiff has no adequate remedy at law.

## COUNT II

### DILUTION IN VIOLATION OF 15 U.S.C. §1125(c)

63.　　Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 62 as if fully set forth herein.

64.　　Plaintiff's protected Trade Dress is famous.

65.　　Plaintiff's protected Trade Dress was famous before Defendant began using them in commerce.

66.　　Defendant's manufacture, distribution and sale of the Infringing Products has diluted and is likely to dilute the value and distinctiveness of Plaintiff's protected Trade Dress.

## COUNT III

### COMMON LAW TRADEMARK INFRINGEMENT

67.　　Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

68.　　The acts complained of herein constitute infringement of Plaintiff's trademark and other intellectual property rights under the common law of Ohio.

## COUNT IV

### DECEPTIVE TRADE PRACTICES UNDER
### OHIO DECEPTIVE TRADE PRACTICES ACT
### OHIO REVISED CODE § 4165.01

69.　　Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 68 as if fully set forth herein.

70.　　Plaintiff owns protectible rights in its FriendshipCollar Trade Dress.

71.    By selling, manufacturing, and distributing the Infringing Products, the Defendants have impermissibly used colorable imitations of Plaintiff's Trade Dress in a manner likely to result in confusion, mistake, or deception.

72.    Defendants' conduct alleged herein constitutes deceptive trade practices in violation of the Ohio Deceptive Trade Practices Act § 4165.02(A) *et seq.*

73.    By reason of Defendants' actions as above alleged, Plaintiff has suffered and will continue to suffer damages and injury to its business, reputation, goodwill, and the dilution of the value of its protected trade dress. As a result of these violations, Plaintiff has suffered damages in an amount to be determined at trial but in no event less than $75,000.00.

74.    Unless enjoined by this Court, Defendants will continue to engage in the acts complained of herein and cause damage and injury to Plaintiff, leaving it without an adequate remedy at law.

### COUNT V

### COPYRIGHT INFRINGEMENT
### REGISTRATION DESIGN NUMBER #6010786
### "DOTTY ABOUT YOU"

75.    Plaintiff repeats and incorporates by reference the allegations of paragraphs 1 through 74 as if fully set forth herein.

76.    Both the United States and the United Kingdom are part of the union of countries that have joined in the Berne Convention for the Protection of Literary and Artistic Works of September 9, 1886, as amended (the "Berne Convention").  The Berne Convention provides copyright protection to authors of literary and artistic works and this protection applies in all member countries of the Berne Convention.

77.    The Berne Convention provides that the authors of works are entitled to copyright protection under the laws of the country of origin together with the laws of the country where protection is claimed.

78.    A true and accurate copy of the Registration Design Number #6010786 with the United Kingdom's Intellectual Property Office is annexed hereto as **Exhibit E**.  In this Complaint, the design illustrated in Exhibit E is sometimes referred to as "**Dotty About You**".

79.    Defendants have violated and continue to violate the exclusive rights held by Plaintiff in Dotty About You.  The facts described in this Complaint and a side-by-side comparison of Dotty About You with Defendants' "Black Gold" item clearly demonstrates that Defendants are directly and willfully infringing Plaintiff's exclusive rights in Dotty About You.





Plaintiff's Design Number #6010786
"Dotty About You"

Defendants' "Black Gold"

80.    Defendants' conduct was direct and willful infringement of the protected design and Defendants are continuing to infringe Plaintiff's Intellectual Property deliberately and willfully despite notice from Plaintiff that their actions infringed upon the exclusive rights of Plaintiff.

81.     Plaintiff has suffered compensable injury as the result of Defendants' past acts of infringement.

82.     Plaintiff will continue to suffer irreparable harm that is ongoing in nature, due to the continuing acts of infringement by Defendants, for which they are without adequate remedy at law to redress. Said continued and improper infringement should be enjoined by this Court to prevent future injury and damage to Plaintiff.

83.     As a result of its unlawful infringement of, and profiteering from, the "Dotty About You" design, Defendants is liable to Plaintiff for damages pursuant to 17 U.S.C § 504, including actual damages suffered by Plaintiff and any profits of Defendants that are attributable to its infringement of the "Dotty About You" design that are not taken into account in computing Plaintiff's actual damages.

84.     Since unlawfully appropriating the "Dotty About You" Design for marketing and advertising purposes, Defendants has witnessed its company and national presence in its industry grow.

85.     Upon information and belief, Defendants' gross revenue and profits attributable to its infringement of the "Dotty About You" Design is significant, the exact amount of which will be determined at Trial.

86.     Plaintiff reserves the right to Amend and further detail the infringing activity by Defendants as they are able to discover such violations.

**WHEREFORE**, Plaintiff respectfully prays for a judgment by this Court for the following:

A.     Preliminarily and permanently enjoining and restraining Defendants, their employees, agents and representatives, and all persons acting in concert or in participation with them, from using

on or in connection with any business, service, or the sale, offering for sale, distribution, advertising, promotion, labeling or packaging, of any services or any goods, or from using for any commercial purpose whatsoever: the FriendshipCollar or any confusingly similar trade dress; any other false designation or false description or representation or any other thing calculated or likely to cause confusion or mistake in the public mind or to deceive the public into the belief that Defendants or their services or products are related to, endorsed by, or sponsored in any way by Plaintiff or its services; and any other false designation or false description or representation or any other thing calculated or likely to injure the business reputation of Plaintiff or to dilute the distinctive quality of Plaintiff's protectable trade dress;

B.   Requiring Defendants to deliver up to the Court for destruction, or to show proof (upon the oath of Defendants made subject to penalty of perjury) of said destruction, any and all products, drawstring bags, labels, signs, circulars, packages, kits, wrappers, packaging, letterheads, business cards, advertisements, promotional items, literature, sales aids, or other matter in the possession, custody, or control of Defendants or their agents or distributors, including any materials posted on Defendants' web sites, which bear or depict in any manner the Infringing Products, the FriendshipCollar Trade Dress or any colorable imitation thereof;

C.      Directing Defendants to recall from any and all channels of distribution any products and advertising and promotional materials distributed by Defendants bearing any matter or materials in violation of any injunction entered herein or bearing or depicting in any manner the Infringing Products, FriendshipCollar Trade Dress or any colorable imitation thereof;

D.      Directing Defendants to account to Plaintiff for their profits and ordering that Plaintiff shall recover from Defendants all of its damages and costs arising from the foregoing acts of intentional infringement and unfair competition, and a sum equal to three times these profits and damages pursuant to 15 U.S.C. §1117;

E.      Awarding Plaintiff Statutory Damages for willful infringement as provided by 17 U.S.C. § 504(c)(2) in the amount of $150,000.00.

F.      Awarding to Plaintiff its actual, compensatory, consequential, and incidental damages, in an as yet undetermined amount, resulting from the acts of Defendants complained of herein, and that such damages be trebled;

G.      Awarding Plaintiff exemplary damages against Defendants in an amount sufficient to punish Defendants and to deter similar conduct in the future;

H.      Awarding Plaintiff its reasonable attorneys' fees incurred as a result of this action, in accordance with applicable law, including federal law and the Ohio Trade Practices Act.

I.      Awarding Plaintiff the costs of this action, including expert witness

fees, in accordance with applicable law;

J.  Awarding Plaintiff prejudgment, moratory and post-judgment interest on any monetary award according to the maximum allowable legal rate; and

K.  Awarding Plaintiff such other and further relief as this Court may deem just and proper.

**PLAINTIFF HEREBY RESPECTFULLY DEMANDS A TRIAL BY JURY**

Dated this 1st day of March, 2018

At: Akron, OH

RESPECTFULLY SUBMITTED,

*/s/Michael J. Elliott*
_____
Michael J. Elliott, Esq.
*(Ohio Bar No. 70072)*
Scanlon & Elliot
57 S. Broadway, 3rd Floor
Akron, OH 44308
Phone: (330) 376-1440
Fax: (330) 376-0257
melliott@scanlonco.com
*Counsel for Plaintiff*

Baruch S. Gottesman, Esq.
*Of Counsel*
Horowitz & Rubenstein LLC
185-12 Union Turnpike
Fresh Meadows, NY 11366
Phone: (917) 647-8625
Fax: (212) 859-7307
*Motion for Pro Hac Vice
admission filed contemporaneously
with the filing of the Complaint*