UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **FRIENDSHIPCOLLAR LTD.**, | ) | CASE NO.:   5:18-cv-478 |
| | ) | |
| Plaintiff | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| **PAWZ LLC**, et al., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF ITS MOTION TO DISMISS TRADE DRESS INFRINGEMENT CLAIMS OF COUNTS I, III AND IV, COPYRIGHT INFRINGEMENT CLAIMS OF COUNT VI,
AND TRADE DRESS DILUTION CLAIM OF COUNT II FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED**

Plaintiff, FriendshipCollar Ltd. ("FC"), has sued Defendants, PAWZ, LLC ("PAWZ") and Campisi, for trade dress infringement, copyright infringement and trade dress dilution. To support its allegations, FC has attached copies of UK trade designs. Under the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), FC's presentation of factual allegations is insufficient to state a plausible claim for any of trade dress infringement, copyright infringement or trade dress dilution, and the related Counts I, II, III, IV and VI, should be dismissed.

These grounds are set forth with particularity below.

**I.   COUNTS I, III AND IV OF THE FIRST AMENDED COMPLAINT DO NOT STATE A PLAUSIBLE CLAIM FOR TRADE DRESS INFRINGEMENT**

Count I of the First Amended Complaint would state a claim for trade dress infringement. Counts III and IV would state a comparable claim under Ohio law.

Claims of deceptive trade practices and unfair competition under the Ohio Deceptive Trade Practices Act and Ohio common law are coextensive with FC's federal trade-dress claim.

1

*Groeneveld Transport Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 520 (6th Cir. 2013).

Notably, although the "facts" pled by FC in support of Counts I, III and IV make reference to its federally registered trademark FRIENDSHIPCOLLAR and logo FC, those trademarks are not the subject of those Counts. Rather, it is the non-registered product trade dress that is the subject of Counts I, III and IV.

Courts exercise particular caution when extending protection to product designs. See, *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 114 (2d Cir.2001) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 380 (2d Cir.1997)). Trade dress claims based on product design raise a potential risk that relief "will hamper efforts to market competitive goods; create a monopoly in the goods themselves rather than a word, phrase, or symbol; and undermine restrictions in copyright and patent law that are designed to avoid granting monopolies to products and ideas." *Yurman Design, Inc.,* 262 F.3d at 115.

Therefore, to state a trade dress infringement claim based upon product design, a party must plead facts identifying its trade dress with particularity and from which it is ascertainable that the following is plausible: (1) the party's trade dress is protectable; (2) there is a likelihood of confusion between the defendant's trade dress and the plaintiff's trade dress; and (3) the features of the trade dress are primarily non-functional. *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,* 270 F.3d 298, 308 (6th Cir.2001).

A claim for trade dress infringement is deficient if it does not identify the plaintiff's trade dress with particularity. *Mike Vaughan Custom Sports, Inc. v. Piku*, 15 F.Supp.3d 735, 745 (E.D. Mich. 2014). After *Iqbal,* a plaintiff must plead sufficient facts in the complaint to support each element of its cause of action. *Id.*

Identifying trade dress with particularity requires that a plaintiff offer a precise expression of the character and scope of its trade dress. *Carson Optical, Inc. v. Prym Consumer USA, Inc.,* 2013 WL 1209041, at *11 (E.D.N.Y. Mar. 25, 2013) (citing *Shevy Custom Wigs, Inc. v. Aggie Wigs.,* 2006 WL 3335008, at *5 (E.D.N.Y. Nov. 17, 2006) ("The issue is not just *which* features are distinctive, but also *how* they are distinctive" (emphasis original)). "[T]he discrete elements which make up that combination should be separated out and identified in a list." *Gen. Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405, 415 (6th Cir.2006) (quoting McCarthy on Trademarks § 8:3 (4th ed.2001)). See also, *Montblanc–Simplo GmbH v. Colibri Corp.,* 692 F.Supp.2d 245, 255 (E.D. N.Y. 2010) ("A plaintiff claiming trade dress infringement as to a line of products must make efforts to fairly put the defendant on notice of the distinctive elements and features of the trade dress…courts in this circuit look askance at descriptions of trade dress in which enumerated elements are not all present in each item within a product line "); and *Sleep Sci. Partners v. Lieberman,* 2010 WL 1881770, at *3 (N.D.Cal. May 10, 2010) ("Although it has cataloged several components of its website, Plaintiff has not clearly articulated which of them constitute its purported trade dress. Notably, Plaintiff employs language suggesting that these components are only some among many, which raises a question of whether it intends to redefine its trade dress at a future stage of litigation").

Providing images is insufficient to identify trade dress with particularity. *Mike Vaughn Custom Sports, Inc*., 15 F. Supp.3d at 747. "[C]ourts cannot be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional." *Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC,* 601 F.Supp.2d 556, 562–63 (S.D.N.Y.2009). See also, *Heller Inc. v. Design Within Reach, Inc.,* 2009 WL 2486054 at *6 (S.D.N.Y. Aug. 14, 2009) ("[I]mages alone do not satisfy the plaintiff's obligation to articulate

3

the distinctive features of the trade dress"). The images do not rescue a plaintiff's trade dress claim where the trade dress is not otherwise stated with particularity because a court cannot distill from the images what the plaintiff claims as protected trade dress or identify what is non-functional about its product design.

Attaching the UK design registrations is similarly insufficient in establishing protectable trade dress with particularity as is attaching photographs. UK design registration protects designs in the United Kingdom. See **Exhibit A1** "Designs and Utility Models Throughout the World," and **Exhibit A2**, Kaye and Dunn, *IP In Business Transactions: UK (England and Wales) Overview* (Sept. 2017) at page 6. They are not *prima facie* evidence of the validity of and ownership rights in trade dress as are federal certificates of registration on the principal register (i.e., 15 U.S.C. §1057(b)). Unlike in the U.S., there is no substantive review of a registration upon filing in the U.K. *Id.* at page 7. Further, in the case of unregistered trade dress in the U.S., the Supreme Court has held that product design almost invariably serves purposes other than source identification—making inherent distinctiveness unlikely and proof of acquired secondary meaning necessary. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210-215, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Additionally, while the Berne Convention alluded to in the allegations of the First Amended Complaint applies to copyrights, as further discussed below, it only protects the artistic expression of ideas, not ideas, such as selling a dog collar and a matching bracelet). **See Exhibit B**, WIPO webpages "Summary of the Berne Convention…." Finally, the Paris Treaty, also eluded to in the allegations of the First Amended Complaint, is applicable to trade dress in that it provides an earlier first use date to the extent application to register product design is subsequently made in the U.S. **See Exhibit C,** "Qualified Foreign Applicant." It does not declare any evidentiary value in the attached UK

design registrations as does 15 U.S.C. § 1057(b) in certificates of federal registration on the principal registration.

The lack of specificity presents another problem. A court cannot evaluate non-functionality without knowing precisely what the plaintiff is trying to protect. *Yurman Design, Inc.,* 262 F.3d at 116.  The plaintiff must plead that the trade dress is non-functional. *Herman Miller, Inc.,* 270 F.3d at 308.

A product feature is "functional" and cannot serve as protectable trade dress if it is essential to the use or purpose of the article or it affects the cost or quality of the article. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 32, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). Particularly relevant, in cases involving an aesthetic feature, "[a] functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.' " *Ibid.* "[T]he nonfunctionality requirement 'protects competition even at the cost of potential consumer confusion.' " *Yurman Design, Inc.,* 262 F.3d at 116, quoting *Landscape Forms,* 113 F.3d at 379–380.

The failure to plead "non-functionality" with factual particularity establishes merely the possibility and not the plausibility of [relief] and is therefore fatal to a plaintiff's trade dress claim." *ID7D Co., Ltd. v. Sears Holding Corp.,* 2012 WL 1247329, at *7 (D.Conn. Apr. 13, 2012). In *ID7D*, the plaintiff alleged that the defendant developed a signature trade dress feature featuring non-functional elements.  The district court found those allegations to be conclusory and therefore not entitled to the presumption of truth, citing *Iqbal,* 556 U.S. at 663, 129 S.Ct. 1937.

Looking at the First Amended Complaint, a description of the trade dress is simply not pled with particularity as is required to state a plausible claim for trade dress infringement.

5

There is no precise expression of the character and scope of FC's trade dress.  There is no listing of discrete elements.  Instead, what are pled are conclusory and generic allegations such as "plaintiff is the owner and sole manufacturer, distributor and seller of the highly distinctive matching bracelet and collar sets."  Doc. 17, PageID 138, par. 11.  See also the references at PageID 139 to "highly distinctive products" and "bold and unique prints," and "tan inner material adorned with a gold-flocked FRIENDSHIPCOLLAR logo."

Notably, while ownership and descriptions of the trademark FRIENDSHIPCOLLAR and the "FC" logo are pled, plaintiff does not further plead that PAWZ has used either of these marks in connection with sales of its product in commerce.  Nor do the attachments to the complaint demonstrate that PAWZ has ever used either mark in connection with sales of its product in commerce. The "request for a quotation" to have a matching bracelet and collar set manufactured, to which the PAWZ logo would be applied and for which artwork would be provided, is not pleading facts from which it can be ascertained that PAWZ was using the FRIENDSHIPCOLLAR trademark or FC logo in connection with the sale of products in commerce. FC disclaimed color in its registration for the FC logo. Hence, no allegation of infringement of a federally registered trademark is pled.  Instead, they appear to be pled to add force and effect to the claim of unregistered trade dress infringement.  Their value to the trade dress appears to be their mere presence as gold-flocked lettering—a further generic allegation.

Instead, however, their having been pled has the opposite effect, belying a likelihood of confusion and rendering the claim of trade-dress infringement not plausible.  "The concern of trademark law is not about copying *per se* by about copying that engenders consumer confusion."  *Groeneveld Transport Efficiency, Inc*., 730 F.3d at 514.  " Differential labeling is critical—it transforms a practice that would otherwise be anticompetitive into one that is

6

procompetitive…The point rather, is that the state of affairs where consumers are aggressively courted and offered competitive options is beneficial as a matter of public policy." *Groeneveld Transport Efficiency, Inc.*, 730 F.3d at 515.

Further, to the extent FC is alleging that its selling of a collar and bracelet in combination is "distinctive," it is attempting to protect an idea through trade dress which it may not legally do. To allow FC, alone, to sell a collar and bracelet in combination is to "create a monopoly in the goods themselves rather than a word, phrase, or symbol; and undermine restrictions in copyright and patent law that are designed to avoid granting monopolies to products and ideas." *Yurman Design, Inc.,* 262 F.3d at 115.

Looking further at the First Amended Complaint, there are no allegations pled addressing non-functionality. Because FC's trade dress is not registered in the U.S. on the principal register, FC must plead facts from which it can be ascertained plausibly that its trade dress is not functional. 15 U.S.C. § 1125(a)(3).

A product feature is functional and cannot serve as a trademark if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001). A product feature is also functional if it is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage. *Id.*

Nothing is pled to counter the fact that a dog collar (like a traffic device) is a functional product. Nothing is pled to counter the fact that a hardware buckle on a dog collar is a functional feature, or that a D-ring on a dog collar is a functional feature. Incorporation of these functional features into a dog collar is not protectable. Nor is the incorporation of a buckle or a D-ring into a bracelet.

In addition to the absence of facts addressing non-functionality, is the lack of facts addressing the acquisition of secondary meaning as a source identifier. FC attempts to plead acquisition of secondary meaning through having its product advertised "in dozens of online and print publications on both local and national television programs across the United States." (Doc. 17, PageID #140). But, again, these statements are without particularity. A description of the protectable trade dress and how it is shown in the ads (i.e., use of the trade dress in the advertising) is not pled. Nor are facts pled relating to the number of times ads (i.e., amount of advertising) have been placed or the time span during which such ads have been placed (i.e., the length of advertising) is not pled. Nor is the dollar amount spent on advertising pled. No direct consumer testimony is pled. Nor is the existence of any consumer survey evidence pled. These are the type of "facts" normally considered in determining the existence of secondary meaning. *Amid, Inc. v. Medic Alert Foundation U.S., Inc*., 241 F.Supp.3d 788, 812 (S.D. Texas 2017). That FC has appeared on the Today Show does not establish that its product design has acquired secondary meaning. Nor does the fact that "Friendship has earned over a thousand independent 5-star reviews on its website" establish that its product design has acquired secondary meaning.

Finally, separately pled is the use of a drawstring-bag packaging—functional packaging. Nothing is pled to contradict that the drawstring-bag is functional. Again, FC points to its trademark on the bag which it identifies as "distinctive." Once again, FC ignores that disclaimed color in its registration. Even more importantly, once again, FC has not pled or presented evidence of PAWZ using either the FRIENDSHIPCOLLAR trademark or FC logo in connection with the sales of goods in commerce either on its packaging or its product. And, once again, FC ignores that the presence of distinctive logos on the parties' packaging belies consumer confusion.

**II. COUNT VI OF THE FIRST AMENDED COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM FOR COPYRIGHT INFRINGEMENT OF A MULTITUDE OF DESIGNS CAPTURED IN THE ATTACHED UK DESIGN REGISTRATIONS**

FC is claiming copyright infringement of a multitude of designs attached to its First Amended Complaint. The Berne Convention will protect copyrights originating in the United Kingdom. However, as in the United States, such copyright protection only extends to the expression of an idea—but not the idea itself. *See* 17 U.S.C. § 102(b); *see also Baker v. Selden,* 101 U.S. 99, 103–04, 25 L.Ed. 841 (1880); and *Mihalek Corp. v. Michigan,* 814 F.2d 290, 294 (6th Cir.1987) ("It is the expressions of the ideas, not the general concepts, that are to be examined particularly, because ideas themselves and general concepts are not copyrightable.")

As a matter of law, FC's copyright does not extend to the idea of selling matching pet collars and bracelets. Compare, *Pollick v. Kimberly-Clark Corp.*, 817 F.Supp.2d 1005, 1013 (E.D. Mich. 2011) ("In this case, Plaintiff's claim of copyright infringement has support in neither law nor fact. At the time the complaint was filed, the law had been long established that Plaintiff's copyright did not confer a broad right to exclude others from producing diapers 'designed to resemble jeans'—but a narrow right to prevent others from reproducing Plaintiff's particular design of diaper jeans.")

Therefore, to state a claim for copyright infringement a plaintiff must plead facts from which can be ascertained as "plausible" both ownership of a valid copyright and copying of the constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). In Count VI, the only allegation is that "defendants have violated and continue to violate the exclusive rights held by Plaintiff in the Various Registered Designs." No facts are pled as to the original elements of the multitude of

9

designs.  No facts are pled as to which if any products of PAWZ are a copy of any of the multitude of designs.  No facts are pled from which it can be ascertained that defendants have even had access to and that any product of PAWZ is substantially similar to any of the multitude of designs.  Count IV must be dismissed as insufficient under *Twombley* and *Iqbal*. See also, *National Business Dev. Serv., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 Fed.Appx. 509, 2008 WL 4772074 at **2.

### III.   COUNT II DOES NOT STATE A PLAUSIBLE CLAIM FOR TRADE DRESS DILUTION

A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.  15 U.S.C. §1125(c)(2)(A).  The cause of action of federal trademark dilution protects a "select class of marks" from a limited number of nationally recognized companies with a "household name." *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F.Supp.2d 657, 674 (W.D.Tex.2008).  Notably, in *Bd. Of Regents, Univ. of Texas, the University of Texas*, the plaintiff failed to present sufficient evidence to demonstrate that its football team's logo was famous enough to entitle it to anti-dilution protection. As recognized by the district court in that case, "One of the major purposes of the TDRA was to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like." *Id.* at 679.

FC has similarly not pled facts sufficient to demonstrate that either its trademarks or its trade dress is nationally recognized, such as the instantaneous recognition of the name Coca-Cola® and its bottle, or McDonald's® and its Golden Arches.

10

## IV.	CONCLUSION

The First Amended Complaint is missing essential factual allegations.  With respect to Counts I, III and IV, FC's trade dress is not identified with particularity and there are no allegations as to its non-functionality.  There is a lack of facts from which secondary meaning can be ascertained.  Count VI does not allege facts from which copying can be ascertained.  Count II does not allege facts from which fame can be ascertained.  As such, Counts I, II, III, IV and VI do not meet the plausibility standard of *Twombly* and *Iqbal*, and should be dismissed under Fed.R.Civ.P. 12(b)(6) for failing to state a claim for which relief can be granted.

Respectfully submitted,

s:/Ray L. Weber
Ray L. Weber         (0006497)
Laura J. Gentilcore    (0034702)
RENNER, KENNER, GREIVE, BOBAK,
TAYLOR & WEBER
106 South Main Street, Suite 400
Akron, OH 44308
Telephone:  (330) 376-1242
Fax:  (330) 376-9646
E-mail: rlweber@rennerkenner.com
E-mail: ljgentilcore@rennerkenner.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS TRADE DRESS INFRINGEMENT CLAIMS OF COUNTS I, III AND IV, COPYRIGHT INFRINGEMENT CLAIMS OF COUNT VI, AND TRADE DRESS DILUTION CLAIM OF COUNT II FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED** has been filed electronically on September 6, 2018, with the United States District Court for the Northern District of Ohio.  Notice of the filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s:/Ray L. Weber